EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Louis Esteban Santiago<br><br>Demandante<br><br>v.<br><br>Marisol Rodríguez<br><br>Demandada-recurrida<br><br>v.<br><br>Crowley Marine Services, Inc.<br><br>Promovida-Peticionaria | Certiorari<br><br>2004 TSPR 78<br><br>161 DPR \_\_\_\_ |

Número del Caso: CC-2002-185

Fecha: 20 de mayo de 2004

Tribunal de Circuito de Apelaciones:

Circuito Regional I

Juez Ponente:

Hon. Charles A. Cordero Peña

Abogado de la Parte Peticionaria:

Lcdo. Carlos George

Abogado de la Parte Recurrida:

Lcda. Beatriz Vázquez de Acarón

Materia: Divorcio-Desacato, Alimentos

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

Louis Esteban Santiago
     Demandante

          v.

Marisol Rodríguez                    CC-2002-185
     Demandada recurrida

          v.

Crowley Marine Services,
Inc.
     Promovida peticionaria


Opinión del Tribunal emitida por la Jueza Presidenta Señora NAVEIRA MERLY



San Juan, Puerto Rico a 20 de mayo de 2004


I

El 12 de mayo de 1998 se decretó el divorcio entre el Sr. Louis Esteban Santiago y la Sra. Marisol Rodríguez. Debido a su pobre estado de salud, a la señora Rodríguez se le asignó una pensión alimentaria de $1,000.00 mensuales a ser pagada en quincenas adelantadas de $500.00. Desde 1991, el señor Santiago prestó servicios a Crowley Maritime Corporation (en adelante Crowley-Matriz) a través de una subsidiaria de ésta en Puerto Rico, llamada Crowley American Transport (en adelante

Crowley-Puerto Rico) hasta el año 1997, cuando fue transferido a Jacksonville, Florida a trabajar con otra empresa afiliada, Crowley Marine Services (en adelante Crowley-Florida), lugar donde prestaba servicios al momento de la sentencia de divorcio. En abril de 1999 el señor Santiago notificó su renuncia al puesto que ocupaba en Crowley-Florida. Posteriormente, el 1ro de julio de 1999, comenzó a laborar en Venezuela con Crowley Marine Services de Venezuela, S.A. (en adelante Crowley-Venezuela), empresa también afiliada con Crowley-Puerto Rico y Crowley-Florida.

Con relación a la pensión alimentaria fijada, se emitió una orden de retención de ingreso del empleado-alimentante (en adelante orden de retención) y su correspondiente depósito en la Administración para el Sustento de Menores (en adelante A.S.U.M.E.). La orden de retención fue originalmente dirigida a Crowley-Puerto Rico y posteriormente, el 19 de junio de 1998, se emitió una orden de retención enmendada y notificada a Crowley-Florida. La orden en contra de Crowley-Florida fue diligenciada a través del departamento de recursos humanos de Crowley-Puerto Rico.

Crowley Maritime Corporation (en adelante Crowley-Matriz), por conducto de su División y/o Departamento de Recursos Humanos y la utilización de memorandos corporativos internos, le indicó a Crowley-Florida que retuviera del salario del señor Santiago el pago

correspondiente y, a través de Crowley-Puerto Rico, lo depositara en A.S.U.M.E, cumpliendo en esa forma con la orden de retención.

A partir del 30 de abril de 1999, fecha en que el señor Santiago dejó de prestar servicios en Crowley-Florida, no se volvió a recibir ningún otro pago de pensiones en A.S.U.M.E. a favor de la señora Rodríguez. Crowley-Florida notificó a A.S.U.M.E., mediante carta de 2 de julio de 1999, la terminación de empleo del señor Santiago, efectiva el 1ro de mayo de 1999 y el 6 de agosto de 1999 le notificó a la señora Rodríguez el nombre y la dirección del nuevo patrono de éste.

Ante esta situación, la señora Rodríguez solicitó al foro de instancia encontrar incursos en desacato al señor Santiago y a Crowley-Florida por incumplimiento de la orden de retención enmendada. A la fecha de dictarse sentencia por el foro de instancia la deuda en concepto de pensión alimentaria ascendía a $17,180.00. Dicho foro determinó que Crowley-Puerto Rico, Crowley-Florida y Crowley-Matriz eran "el verdadero patrono" y eran solidariamente responsables de las pensiones que dejaron de retener y remitir a A.S.U.M.E. por lo que les impuso a estas empresas el pago de las mismas. Además, se les impuso una multa de $500.00 por incumplir algunas disposiciones de la Ley Orgánica de la Administración para el Sustento de Menores (en adelante Ley Orgánica), 8 L.P.R.A. sec. 501 *et seq.*

Inconforme con el dictamen, Crowley-Florida acudió al Tribunal de Apelaciones. Dicho foro modificó la sentencia recurrida y ordenó a Crowley-Florida pagar el monto de las cantidades por concepto de atrasos en la pensión alimentaria según surgía del Certificado de Estado de Cuenta emitido por A.S.U.M.E al momento de hacer la liquidación al señor Santiago. Además, se confirmó la multa impuesta y dejó sin efecto cualquier obligación impuesta por la sentencia a cualesquiera otras empresas afiliadas de Crowley-Matriz, Crowley-Florida, Crowley-Puerto Rico y Crowley-Venezuela a menos que estas empresas estuvieran debidamente ante la jurisdicción *in personam* del Tribunal de Primera Instancia. Inconformes con esa determinación, la peticionaria acude ante nos mediante recurso de *certiorari*. En síntesis, debemos resolver si se puede hacer responsable a un patrono de pagar las cantidades por concepto de atrasos en la pensión alimentaria, según surgía del Certificado de Estado de Deuda al momento de hacer la liquidación, a pesar que de la orden de retención no surgía dicho mandato. Expedimos el auto solicitado y con el beneficio de los argumentos de las partes, procedemos a resolver.

## II

El 20 de diciembre de 1997 la Asamblea Legislativa aprobó la Ley Núm. 180 para adoptar en Puerto Rico la Uniform Interstate Family Support Act (en adelante

U.I.F.S.A.), con el nombre de Ley Interestatal Uniforme de Alimentos entre Parientes (en adelante L.I.U.A.P.), con el propósito de que pudiéramos participar de los fondos federales para los Programas de Sustento de Menores y Asistencia Pública a familias necesitadas asignados a los estados que adopten la mencionada ley. La L.I.U.A.P. es un estatuto modelo que el gobierno federal requiere sea adoptado por todos los estados y territorios de los Estados Unidos con el fin de establecer uniformidad en la fijación y ejecución de obligaciones alimentarias entre personas que residen en diferentes estados.[1] Esta ley tuvo el efecto de enmendar la Ley Orgánica, *supra*, que procura que los padres o las personas legalmente responsables contribuyan a la manutención de sus hijos o dependientes mediante el fortalecimiento de los sistemas y la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de las pensiones alimentarias.

El Art. 24 de la Ley Orgánica, 8 L.P.R.A. sec. 523, establece la retención de ingresos como una medida para asegurar la efectividad del pago de pensiones

---

[1] Véase Exposición de Motivos de la Ley Núm. 180 de 20 de diciembre de 1997.

alimentarias. El inciso (1)(a) del mencionado artículo provee, en lo pertinente, que:

> El tribunal o el administrador, conforme a las disposiciones de este capítulo, al momento de fijar o modificar una pensión alimentaria, emitirá inmediatamente una orden fijando o modificando la pensión alimentaria y requiriendo al patrono del alimentante o a cualquier persona que sea pagador con relación al alimentante, conforme se define en la sec. 501 de este título, que retenga o descuente en el origen, de los ingresos del alimentante, independientemente de si existen o no atrasos en el pago de pensión alimentaria, las cantidades señaladas en la orden para satisfacer el pago de la pensión, y de cualquier deuda por razón de pensiones vencidas y no pagadas.

La orden de retención de ingresos es fundamental para el aseguramiento y cobro de deuda por alimentos. Según Sarah Torres-Peralta, en su obra *La Ley Especial de Sustento de Menores y el derecho de alimentos en Puerto Rico*, 1997, pág. 11.11, "es quizás el medio más efectivo disponible para hacer cumplir las obligaciones alimentarias". Mediante este mecanismo todo alimentante que sea empleado o reciba alguna remuneración adicional de un pagador se podrá mantener al día en el cumplimiento de sus obligaciones alimentarias.

En cuanto a las órdenes de retención para patronos, la Ley Orgánica dispone que el secretario del tribunal o el Administrador, según sea el caso, notificará prontamente al patrono o al pagador del alimentante deudor, y al alimentista, la orden de retención de ingresos, señalándose su obligación de retener o

descontar en el origen de los ingresos del alimentante las cantidades señaladas en la orden para satisfacer el pago de la pensión y de cualquier deuda por razón de pensiones vencidas y no pagadas. 8 L.P.R.A. sec. 523(5). Estas órdenes son efectivas desde su notificación y continúan en vigor mientras subsista la obligación de prestar alimentos o hasta que sea suspendida o dejada sin efecto, modificada o revocada por el tribunal o el Administrador. 8 L.P.R.A. sec. 523(5)(a).

En el caso de autos, la parte peticionaria sostiene que no estaba obligada a solicitar el Certificado de Cuenta por cuanto dicho requerimiento no surgía expresamente de la orden de retención. De esto concluye que no tenía que efectuar una retención de la liquidación por terminación de empleo o pagar las cantidades por concepto de atraso en la pensión alimentaria, según surgía de la certificación al momento de hacer dicha liquidación. No le asiste razón.

El inciso (9) de la referida sección establece lo siguiente en cuanto al contenido de la orden de retención:

(9) La notificación al patrono o pagador comprenderá los siguientes extremos:

(a) El nombre y número de seguro social del alimentante, así como cualquier otro número o dato para la identificación de éste, la cantidad a ser retenida del sueldo o salario mensual del deudor alimentante para el pago de la pensión corriente de cada mes;
(b) la cantidad a ser retenida para el pago de los atrasos, si los hubiera, y fecha en que cesará esta retención;

(c) la cantidad máxima que el pagador o patrono podrá retener del ingreso del alimentante para sufragar el costo de cada retención que realice, cuando y conforme lo determine el administrador mediante reglamento;

(d) aviso de sus obligaciones y responsabilidades como patrono o pagador bajo este capítulo, así como los términos y procedimientos, conforme se dispone en los incisos (6) al (8) y (10) al (14) de esta sección, respectivamente;

**(e) aviso de su obligación como patrono o pagador de continuar haciendo las deducciones o retenciones hasta que se notifique lo contrario, y**

(f) aviso de que deberá notificar al tribunal o a la administración, según el caso, dentro de los treinta (30) días siguientes a la terminación de empleo de los alimentantes o a la terminación de la obligación de pagar al alimentante, la ocurrencia de este hecho en unión a la última dirección conocida de éste, así como también el nombre y dirección del nuevo patrono o pagador, de conocerlos.

**(g) Cuando el alimentante termina su empleo, y es acreedor de cualesquiera cantidades por concepto de liquidación, el patrono o pagador deberá gestionar con el Administrador un Certificado de Estado de Cuenta. En el mismo se certificará cualquier atraso de más de un mes sin pagar la pensión o el plan de pagos establecido. De existir atrasos, se descontará de las cantidades a ser entregadas al alimentante por concepto de liquidación, aquélla que corresponda para pagar los atrasos y se le remitirá al administrador.**
(Énfasis suplido.)

Aunque la orden de retención expedida no dispone expresamente la obligación de Crowley-Florida de solicitar un Certificado de Deuda, la orden sí expresa:

Si dejare intencionalmente de retener o remitir el ingreso retenido conforme a esta solicitud o **si incumpliere con cualesquiera de los deberes impuestos por Ley**, a solicitud del acreedor o del Administrador-ASUME, el Tribunal previa notificación y celebración de vista, dictará sentencia por el total de la cantidad que haya dejado de retener y remitir, y ordenará la ejecución de ésta sobre la propiedad del patrono o pagador, excepto en el caso en que el patrono o

pagador sea un municipio, departamento o agencia del Estado Libre Asociado de Puerto Rico. (Énfasis suplido.)

De la citada disposición legal se desprende la obligación del patrono de cumplir con el mandato de la Ley Orgánica de la A.S.U.M.E., 8 L.P.R.A. sec. 502, que, como expresáramos anteriormente, fue creada para fortalecer y agilizar los procedimientos de recaudación de pensiones alimentarias. En la declaración de política pública de dicha ley se estableció que las disposiciones de ésta se interpretarán liberalmente a favor de los mejores intereses del menor o alimentista que necesita alimento. 8 L.P.R.A. sec. 502. Es clara la intención del legislador de proveer nuevos mecanismos que sanen el grave problema de incumplimiento de la obligación alimentaria hacia los hijos o dependientes. Aunque la mejor práctica en casos donde se expidan órdenes de retención de ingresos es detallar las obligaciones del patrono mediante mandatos claros y específicos, no podemos obviar que es norma fundamental en nuestro ordenamiento jurídico que la ignorancia de las leyes no excusa de su cumplimiento. 31 L.P.R.A. sec. 2; *Cabassa v. Bravo*, 21 D.P.R. 185, 187 (1914). Dicho esto, forzoso es concluir que Crowley-Florida debió solicitar de A.S.U.M.E. un Certificado de Estado de Cuenta y proceder a retener y remitir la cantidad en

atrasos en pensión alimentaria de la cantidad liquidada, aunque no surge tal requisito de la orden de retención.

La obligación de honrar una orden de retención, una vez se ha notificado la misma, recae sobre el patrono. 8 L.P.R.A. sec. 523 (10)(13). Cuando un patrono incumple el deber de retener o remitir el ingreso retenido conforme a una orden de retención, o no cumple con los deberes impuestos por la Ley Especial, 8 L.P.R.A. sec. 501 *et seq.*, el tribunal o Administrador dictará sentencia u orden por el total de la cantidad que el pagador o patrono dejó de retener, más multas, gastos e intereses. Además, se ordenará la ejecución de la cantidad adeudada sobre la propiedad del patrono.[2]

Tanto la U.I.F.S.A. como la L.I.U.A.P. establecen un sistema de una sola orden, el cual se apoya en el principio de jurisdicción continua y exclusiva del tribunal que emite una orden de pensión alimentaria o una determinación de filiación. Bajo la U.I.F.S.A., el principio de jurisdicción continua y exclusiva pretende, en la medida de lo posible, reconocer que sólo una orden de pensión alimentaria válida puede estar vigente en un momento dado. *Aponte v. Barbosa Dieppa*, 146 D.P.R. 558, 571 (1998).

A esos efectos, la U.I.F.S.A. establece lo siguiente:

---

[2] Excepto en el caso en que el pagador o patrono sea un municipio, departamento o agencia del Estado Libre Asociado de Puerto Rico.

a) Upon receipt of an income-withholding order, the obligor's employer shall immediately provide a copy of the order to the obligor.

(b) The employer shall treat an income-withholding order issued in another State which appears regular on its face as if it had been issued by a tribunal of this State.

(c) Except as otherwise provided in subsection (d) and Section 503, the employer shall withhold and distribute the funds as directed in the withholding order by complying with terms of the order which specify:

(1) the duration and amount of periodic payments of current child-support, stated as a sum certain;
(2) the person designated to receive payments and the address to which the payments are to be forwarded;
(3) medical support, whether in the form of periodic cash payment, stated as a sum certain, or ordering the obligor to provide health insurance coverage for the child under a policy available through the obligor's employment;
(4) the amount of periodic payments of fees and costs for a support enforcement agency, the issuing tribunal, and the obligee's attorney, stated as sums certain; and
(5) the amount of periodic payments of arrearages and interest on arrearages, stated as sums certain.

2(d) An employer shall comply with the law of the State of the obligor's principal place of employment for withholding from income with respect to:

(1) the employer's fee for processing an income-withholding order;
(2) the maximum amount permitted to be withheld from the obligor's income; and
(3) the times within which the employer must implement the withholding order and forward the child-support payment. 29 U.S.C.A. sec. 502.

De la referida disposición legal se desprende el requerimiento de la notificación directa de la orden de retención al patrono en otro estado sin necesidad de

iniciar una acción en el estado donde se ubica el patrono. Es decir, el patrono debe cumplir con la orden de retención de otro estado como si se tratara de una orden emitida por el estado en el cual está ubicado.

La peticionaria señala, además, que erró el Tribunal de Apelaciones al determinar que ésta venía obligada a pagar las cantidades por concepto de atrasos, cuando no surge del récord cuál fue el pago por liquidación, si alguno, emitido a favor del señor Santiago.[3]

El Art. 24 de la ley Orgánica, 8 L.P.R.A. 523(9)(g), establece que se le descontará al alimentante los atrasos existentes al momento del cese en el empleo de la cantidad a la que éste sea acreedor por concepto de liquidación. Por otro lado, el mencionado inciso (3) de dicho artículo hace responsable al patrono por las cantidades dejadas de remitir o retener autorizando al tribunal o Administrador, previa notificación al patrono o pagador, y notificación de vista, a dictar sentencia u orden por el **total de las cantidades que el patrono o pagador dejó de remitir o retener**.

En el caso de autos existen dos (2) momentos claves para la determinación de la cuantía de atraso en la

---

[3] La peticionaria alega que bajo las cantidades de liquidación no se puede considerar cualquier cantidad que pudiera haber sido recibida por concepto de plan de pensión conforme al Employee Retirement Income Security Act, 29 U.S.C. sec. 1001 *et seq.*, (E.R.I.S.A., por sus siglas en inglés). En los autos no consta copia del plan de retiro y el foro de instancia no hizo una determinación de hechos respecto a la aplicabilidad de E.R.I.S.A.

pensión alimentaria; 30 de abril de 1999 (fecha en que el señor Santiago renunció) y la fecha en que se liquidaron los beneficios (de ser diferente a la anterior). Para determinar con exactitud a cuánto ascendía el atraso en pensión alimentaria y la obligación de retención al momento de traslado y la liquidación de beneficios, Crowley-Florida debe informar cuándo se liquidaron los beneficios y a cuánto ascendió la liquidación y gestionar el Certificado de Estado de Cuenta correspondiente a la fecha de liquidación. De la cantidad liquidada el patrono está obligado a retener la suma adeudada por pensión alimentaria, por ende, es ésta la cantidad por la que Crowley-Florida tiene que responder. La responsabilidad del patrono estará limitada a la cantidad liquidada, independientemente de que la suma adeudada sea mayor que dicha cantidad.

### III

Por los motivos antes expuestos, modificamos el dictamen del Tribunal de Apelaciones a los efectos de ordenar a Crowley-Florida informar cuándo se liquidaron los beneficios, a cuánto ascendió la liquidación y gestionar el Certificado de Estado de Cuenta correspondiente a la fecha de liquidación. Devolvemos el caso al foro de instancia para la continuación de los procedimientos a tenor con lo aquí resuelto.

MIRIAM NAVEIRA MERLY
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Louis Esteban Santiago

        Demandante

            v.

Marisol Rodríguez
                                        CC-2002-185
        Demandada recurrida

            v.

Crowley Marine Services, Inc.

        Promovida peticionaria

                        Sentencia


                San Juan, Puerto Rico a 19 de mayo de 2004


                    Por los fundamentos expuestos en la
                Opinión que antecede, modificamos el
                dictamen del Tribunal de Apelaciones a los
                efectos de ordenar a Crowley-Florida
                informar a cuánto ascendió la liquidación y
                gestionar el Certificado de Cuenta
                correspondiente a la fecha de liquidación.
                Devolvemos el caso al foro de instancia para
                la continuación de los procedimientos a
                tenor con lo aquí resuelto.

                    Lo acordó el Tribunal y certifica la
                Secretaria del Tribunal Supremo. El Juez
                Asociado señor Rebollo López no intervino.
                El Juez Asociado señor Hernández Denton
                disiente sin opinión escrita. El Juez
                Asociado señor Corrada del Río inhibido.



                        Patricia Otón Olivieri
                        Secretaria del Tribunal Supremo